**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Brett Thomas Green, | Case No. 14-cv-859 (ADM/SER) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Kevin Monio, Bradley Gross, Sarah Anderson, Aaron Johnson, James Frick, James Lange, Michael Costello, Kent Grandlienard, Nathaniel Fritz, and the Night Staff of 08/03/2013 in Complex 5 of MCF 2 – OPH, | |
| Defendants. | |

Brett Thomas Green, *Pro se*, No. 234238, Rush City, Minnesota.

Jonathan D. Mohler, Esq., Minnesota Attorney General's Office, St. Paul, Minnesota, for Defendants Kevin Monio, Bradley Gross, Sarah Anderson, Aaron Johnson, James Lange, Michael Costello, and Kent Grandlienard.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendants Kevin Monio, Michael Costello, James Lange, Bradley Gross, Sarah Anderson, Aaron Johnson, and Kent Grandlienard's (collectively, the "DOC Defendants") Motion for Summary Judgment [Doc. No. 35], which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), and

District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends granting the Motion for Summary Judgment.

I.  BACKGROUND

   A.  Factual Background

Plaintiff Brett Thomas Green ("Green") is incarcerated at the Minnesota Correctional Facility at Rush City, Minnesota ("MCF-Rush City"). *See* (Compl.) [Doc. No. 1]. Previously, he was incarcerated at the Minnesota Correctional Facility in Oak Park Heights, Minnesota ("MCF-OPH"). (Aff. of Tammy Wherley, "Wherley Aff.") [Doc. No. 37 ¶ 3]. During his time at MCF-OPH, Green alleges fellow inmate Nathaniel Fritz ("Fritz") threatened him. (Compl. at 4).[1]

On August 4, 2013, Green and Fritz engaged in a fight while they were both incarcerated at MCF-OPH. *See* (Compl. at 4–6).[2] Green alleges Fritz tried to kill him by disemboweling him and trying to cut his throat. (*Id.* at 4). The DOC Defendants provided a surveillance video of the altercation. *See* (Video (Aug. 4, 2013), Ex. F, Attached to Wherley Aff.). The video begins with Fritz on the phone in a small room. (*Id.*). Green enters and begins punching Fritz. (*Id.*). The two fight, and Fritz uses a razor against Green.[3] (*Id.*). DOC staff told Green and Fritz to stop fighting, but were ignored. (Incident Report, Minn. DOC, MCF-OPH (James Frick, Aug. 4, 2013), Ex. G,

---

[1]   The page numbers referred to are those assigned by CM/ECF.
[2]   Although Green alleges in one part of the Complaint that the fight took place at MCF-Rush City, *see* (Compl. at 5), he alleges claims against unnamed defendants "the Night Staff of 08/03/2013 in Complex 5 of MCF 2 – OPH." (Compl. at 1); *see also* (*id.* at 4). Further, Minnesota Department of Corrections ("DOC") records show that on August 4, 2014, Green was incarcerated at MCF-OPH. (Minn. DOC Living Assignment History Report for Green, Ex. B, Attached to Wherley Aff.).
[3]   Although not clear from the video, the DOC Defendants offer evidence that the "razor appears to fall from the pants of one of the offenders as they roll on the floor." (Wherley Aff. ¶ 6). Green states that Fritz received the razor from a DOC Defendant and Fritz did not return the razor as required. *See* (Compl. at 4–5). The Court views all evidence in favor of Green as the nonmoving party. *See Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005). Regardless, the origin of the razor is not relevant to the Court's resolution of the Motion for Summary Judgment.

Attached to Wherley Aff.). DOC employee James Frick ("Frick") administered a chemical irritant, but Green and Fritz continued to fight. (*Id.*). DOC employees then entered the unit and deployed additional chemical irritant. (*Id.*). At that point, Green and Fritz stopped fighting and began following DOC employees' instructions. (*Id.*).

Green sustained several injuries, including cuts on his face that left scars. (Compl. at 4). Green's face and ear are now disfigured. (*Id.* at 5).

After the fight, DOC officials put an "offender incompatibility" in place for Green and Fritz.[4] "Green was sentenced to forty-five days of disciplinary segregation." (Mem. of Law in Supp. of Defs.' Mot. for Summ. J., "Mem. in Supp.") [Doc. No. 36 at 6]. On August 7, 2013, DOC Investigator Mary Stahl-Swanson interviewed Green regarding the altercation. *See* (Recording of Interview (Aug. 7, 2013), Ex. H, Attached to Wherley Aff.). Green declined to press charges against Fritz. (*Id.*); *see also* (Prosecution Declination, Minn. DOC (Aug. 7, 2013), Ex. I, Attached to Wherley Aff.).

**B.   Procedural Background**

Green initiated this action on March 28, 2014. (Compl.). Green alleges that the DOC Defendants failed to protect him because they should have known Fritz wanted to hurt others, they should have known about a dispute between Green and Fritz, Defendants failed to notice that Fritz kept a razor he borrowed, and they did not timely intervene in the fight. (*Id.* at 5–6). Further, Green alleges Kent Grandlienard ("Grandlienard"), the warden, failed to protect him because he failed to train his staff, failed to enforce policies and the law, and failed to ensure "the overall safety of those in his care, [and] in the care of his staff." (*Id.* at 6). Green alleges the

---

[4]   An "incompatibility" means that "there is a risk of serious bodily injury to the offenders if the offenders are not physically separated." (Minn. DOC, Offender Incompatibility, Ex. A, Attached to Aff. of Mike Costello, "Costello Aff.") [Doc. No. 39].

defendants violated his Sixth and Eighth Amendment rights pursuant to 42 U.S.C. § 1983, and that Fritz violated his Sixth Amendment rights. *See* (*id.* at 1, 6). Green seeks monetary damages. (*Id.* at 5).

The Court granted Green *in forma pauperis* status and gave additional time to Green to make the required payments. *See* (Text Only Entry Order Dated May 30, 2014) [Doc. No. 6]. The DOC Defendants were served in early February 2015 and answered on February 19, 2015. (Answer of Defs. Monio, Anderson, Johnson, Gross, Costello, Lange, & Grandlienard) [Doc. No. 18]. Service was not executed with respect to the remaining defendants: Fritz, Frick, and the "Night Staff of 08/03/2013 in Complex 5 of MCF 2 – OPH" (the "Night Staff"). (Summonses Returned Unexecuted) [Doc. Nos. 13, 15, 17].

The DOC Defendants moved for summary judgment, arguing: (1) Green failed to exhaust his administrative remedies; (2) Green's Eighth Amendment Rights were not violated, Green cannot show that the DOC Defendants' actions caused his injuries; and (3) the DOC Defendants are entitled to qualified immunity. (Mem. in Supp. at 7–17).

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "the mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The court views the evidence and makes all reasonable inferences in favor of the nonmoving party. *Sallis*, 408 F.3d at 474.

4

To support its argument, the moving party must cite to record materials or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). When the parties have differing views of the facts, a court should not adopt the view that "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Analysis

Exhaustion of administrative remedies is a threshold issue. *See Benjamin v. Ward County*, No. 15-1797, — F. App'x —, 2016 WL 336204, at *1 (8th Cir. Jan. 28, 2016) (per curiam) (concluding that "the district court erred by proceeding to the merits of Benjamin's claims without first determining whether he had exhausted administrative remedies that were available"). There is no dispute that Green did not seek administrative remedies. (Compl. at 3); (Mem. in Supp. at 9). The parties disagree, however, regarding whether Green was required to exhaust his administrative remedies before initiating this action. *See* (Compl. at 3); (Mem. in Supp. at 9).

Because the Court finds Green failed to exhaust his administrative remedies, the Court does not address the DOC Defendants' remaining arguments and recommends that the Motion for Summary Judgment be granted. *See generally Barber v. Schmidt*, Civil No. 10-3317 (JRT/SER), 2011 WL 3476878 (D. Minn. July 12, 2011) (Rau, Mag. J.) (recommending dismissal for failure to exhaust administrative remedies), *adopted by* 2011 WL 3476654 (Aug. 9, 2011).

### 1. Exhaustion Requirement

Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner may not bring a claim under 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this requirement "[i]n an effort to address the large number of prisoner complaints filed in federal court," *Jones v. Bock*, 549 U.S. 199, 202 (2007), and "to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense . . . , and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216; *see also Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) ("[F]ailure to exhaust administrative remedies under section 1997e(a) does not deprive a federal court of jurisdiction").

"Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter*, 534 U.S. at 524. This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Even if the relief a prisoner seeks (i.e., monetary damages) is not available through the grievance procedure, exhaustion is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

In the Eighth Circuit, there are only two circumstances that excuse a prisoner from complying with an institution's grievance procedures. First, if prison officials prevent an inmate from exhausting the administrative remedies, the prisoner "cannot be held to the exhaustion requirement." *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002); *see also Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (stating that if prison officials prevent a prisoner from utilizing a remedy, then the remedy is not "available" under § 1997e(a)). Nonetheless, a court cannot consider a prisoner's "subjective beliefs, logical or otherwise, in determining whether

administrate procedures are 'available.'" *Lyon*, 305 F.3d at 809; *see also Chelette*, 229 F.3d at 688 ("Section 1997e(a) says nothing about the prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him."). Second, compliance with the exhaustion requirement is not required "when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).

### 2. Failure to Exhaust

The DOC Defendants argue the DOC has a formal grievance policy that "permits offenders to file formal grievances regarding most issues which might arise in the prison setting" and that prisoners have access to the policies and can obtain copies. (Mem. in Supp. at 9); *see also* (Aff. of Kim Ebeling, "Ebeling Aff.") [Doc. No. 38 ¶ 2]; (Grievance Procedure, Ex. A, Attached to Ebeling Aff.). Specific to Green's failure-to-protect claim, the DOC Defendants argue that Green could have submitted a grievance about this issue to MCF-OPH's grievance coordinator, or directly the DOC's Central Office. (Ebeling Aff. ¶ 4). Green did not file a grievance through the Central Office, and the DOC Defendants present evidence that Green has not submitted any other kites related to Fritz. (*Id.*); (Costello Aff. ¶ 5).

Green's memorandum in opposition to the DOC Defendants' Motion for Summary Judgment does not address this issue. *See* (Resp. in Opp'n to Mot. for Summ. J.) [Doc. No. 57]. Green acknowledges in his Complaint, however, that he did not exhaust his administrative remedies.[5] (Compl. at 3) (responding "no" to form question regarding whether he "present[ed] the facts relating to [his] compliant in the prisoner grievance procedure"). Green states that he

---

[5] Although Green submitted Offender Kite Forms with his Complaint, these kites address his medical issues and do not address any claims specific to Fritz's threats against Green or DOC employees' failure to protect Green. *See* (Offender Kite Forms (Aug. 6, 2013; Aug. 11, 2013; Aug. 12, 2013), Ex. C, Attached to Compl.). Green does not allege any claims related to medical treatment. *See* (Compl.).

7

did not seek administrative remedies because (1) he could not be compensated through the grievance process; (2) his Eighth Amendment claim was not a grievable issue; and (3) he was told he could not file a grievance because he pleaded guilty to the discipline proceedings regarding the fight. (Compl. at 3).

Although Green's failure to address the DOC Defendants' assertions may support granting summary judgment, Green's Compliant is verified under penalty of perjury. *See* Fed. R. Civ. P. 56(e); (Compl. at 5). Therefore, "it is the equivalent of an affidavit and can serve as [Green's] response to the defendants' summary judgment motion under Federal Rule of Civil Procedure 56(e)." *Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005).

The Court addresses each of Green's arguments in turn. First, exhaustion is required even if the relief Green seeks—monetary damages—is not available through the grievance procedure. *Booth*, 532 U.S. at 741. Therefore, there is no genuine dispute with respect to Green's argument that he was excused from exhausting administrative remedies because his remedy was not available. *See* (Compl. at 3).

Second, the DOC Defendants presented evidence in the form of affidavits and supporting documentation demonstrating that Green could have engaged in the grievance procedure by submitting a grievance about Fritz's threats and DOC employees' failure to protect him to his grievance coordinator or to the DOC's Central Office. *See generally* (Ebeling Aff.) (describing DOC's grievance procedure); *see also* (*id.* ¶ 4); (Costello Aff. ¶ 5). Green's assertion that his claim was not a "grievable issue," therefore, is not genuinely in dispute because it "is blatantly contradicted by the record, so that no reasonable jury could believe it." *See Scott*, 550 U.S. at 380.

Finally, Green's assertion that he was told he could not submit a grievance—even if true—is unavailing. *See* (Compl. at 3). Prison officials did not prevent him from exhausting administrative remedies, thereby excusing his failure to seek those remedies. *See Lyon*, 305 F.3d at 808. Green does not allege that prison officials interfered with the grievance process; instead, he alleges that he was told he could not file a grievance regarding the altercation with Fritz. *See* (Compl. at 3). This type of statement does not render the grievance procedure unavailable to Green for the purposes of exhaustion under § 1997e(a). *See, e.g.*, *Baughman v. Harless*, 142 F. App'x 354, 359 (10th Cir. 2005) ("[A]dministrative remedies may be found unavailable, thereby excusing an inmate from technically exhausting remedies, where the prisoner supports his allegations that he placed his grievances in the mail, but they were lost or destroyed and therefore his efforts to exhaust available administrative remedies were impeded by correctional officers."); *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007) (noting but not discussing fact that district court found prison officials prevented plaintiff from exhausting his administrative remedies because a prison official "destroyed [plaintiff]'s completed grievance form").

An Eighth Circuit case is instructive on this point. In *Gibson*, appellants, who were inmates in state custody, alleged that state correctional officials and outside medical personnel were deliberately indifferent to their medical needs in violation of the Eighth and Fourteenth Amendments and state law. 431 F.3d at 340. Appellants did not participate in the administrative remedy process outlined by the institution's guide but argued that "it was always made clear" that "any healthcare complaints were to be made informally to [medical providers] and not to the prison administration under its grievance procedures." *Id.* (internal quotation marks omitted)., They therefore argued that the grievance procedures were not "available" to them, thus excusing the exhaustion requirement in § 1997e(a). *Id.* at 341. The Eighth Circuit affirmed the district

court's grant of summary judgment, finding that the appellants "presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances." *Id.*

Similarly, in *Lyon*, the institution's chaplain told the prisoner that the chaplain was not responsible for the decision to exclude the prisoner from participating in the Jewish community and that an outside party would make that decision. 305 F.3d at 808. The Eighth Circuit found this statement "was, at best, a prediction that [the prisoner] would lose if he complained through the administrative grievance procedure." *Id.* It did not, however, constitute "a denial of [the prisoner's] right to complain, nor could the statement have misled him about the availability of the procedure." *Id.* None of these allegations "changed the fact that procedures were available to [the prisoner] through which he could claim that his constitutional rights had been violated." *Id.* at 809.

Here, Green does not dispute that the DOC's grievance procedures are available to him. Nor does he argue that he attempted to file a grievance and prison officials interfered with that process. Instead, he was told that he "couldn't" file a grievance because he pleaded guilty to the disciplinary charge. (Compl. at 3). "A plaintiff must present some evidence, other than mere conclusory statements, to demonstrate that he was precluded from fully exhausting his administrative remedies." *Allen v. Jussila*, No. 08cv6366 (JNE/JSM), 2010 WL 759870, at *6 (D. Minn. Mar. 2, 2013) (Ericksen, J., adopting report and recommendation of Mayeron, Mag. J.) (internal quotation marks omitted). Even taking Green's assertion as true, no reasonable jury could conclude that prison officials "thwarted an attempt to initiate the procedures or that any official made it impossible for [him] to file grievances." *See Gibson*, 431 F.3d at 341; *see also Scott*, 550 U.S. at 380.

The DOC Defendants demonstrated that "there is no genuine dispute as to any material fact" with respect to Green's failure to exhaust his administrative remedies as the PLRA requires. Therefore, the Court recommends that the DOC Defendants' Motion for Summary Judgment be granted.

## III.   REMAINING DEFENDANTS

As noted above, the three remaining defendants—Fritz, Frick, and the Night Staff—have not been properly served. The Court *sua sponte* recommends these defendants be dismissed without prejudice.

### A.   Fritz

When a prisoner brings a claim under 42 U.S.C. § 1983, a court may *sua sponte* dismiss an action for failure to state a claim upon which relief can be granted, even if the prisoner has not exhausted the required administrative remedies. 42 U.S.C. § 1997e(c).

As stated above, Fritz was a fellow inmate with whom Green fought while incarcerated at MCF-OPH. (Compl. 4–6). Green does not allege, and none of the facts alleged in the Complaint suggest, that Fritz is a state actor or that Fritz was "jointly engaged with a state actor." *Hutchinson v. Jefferson County Jail*, 242 F.3d 375, 2000 WL 1820560 (8th Cir. Dec. 13, 2000) (unpublished) (per curiam) (dismissal of prisoner's claim against fellow inmate was appropriate when prisoner failed to allege that the fellow inmate "was jointly engaged with a state actor"); *see also Dennis v. Sparks*, 449 U.S. 24, 26–27 (1980) (stating that for a private individual to be considered to act "under color of" law for the purposes of a § 1983 claim, the individual must be "a willful participant with the State or its agents"); (Compl.). Therefore, Green has failed to state

a claim against Fritz for which relief can be granted, and the Court recommends Fritz be dismissed without prejudice pursuant to § 1997e(c).[6]

### B. Frick and the Night Staff

A court must dismiss an action against a defendant who has not been served within 120 days after the plaintiff filed the complaint, unless the plaintiff "shows good cause for the failure." Fed. R. Civ. P. 4(m) (2014).[7]

The record in this case demonstrates that there was some delay in serving the defendants that was not attributable to Green. *See* (Letter from Thomas S. Schappa, Operations Supervisor – Case Administration, Clerk's Office, to Green (Jan. 29, 2015)) [Doc. No. 11] (stating that although the Clerk's Office received service documents on September 17, 2014, it did not process them until January 27, 2015, and the U.S. Marshal's Office was "in the process" of serving defendants). The summonses for Frick and the Night Staff were returned unexecuted. (Summonses Returned Unexecuted) [Doc. Nos. 13, 17]. Nothing on the docket reflects any further attempts to serve Frick and the Night Staff and neither party has noticed an appearance. Thus, even if the Court construes the date of Green's filing of his Complaint as the date of the letter from the Clerk's Office, far more than 120 days have passed and Frick and the Night Staff have not been served with Green's Complaint. Furthermore, the record does not show that Green has "good cause" for his failure to serve Frick and the Night Staff. *See* Fed. R. Civ. P. 4(m).

---

[6] For all the same reasons, and because Green applied for and was granted permission to proceed *in forma pauperis*, dismissal is also appropriate pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that, with respect to prisoners seeking to proceed *in forma pauperis*, a court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted"). *See* (Order Dated Sept. 5, 2014) [Doc. No. 8].

[7] Effective December 1, 2015, the Federal Rules of Civil Procedure were amended to require service within ninety days. Fed. R. Civ. P. 4(m) (2016). Because Green filed his Compliant in 2014, the Court relies on the Federal Rules of Civil Procedure in place at that time.

Therefore, the Court recommends that Frick and the Night Staff be dismissed without prejudice. *See id*.

IV. **CONCLUSION**

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Kevin Monio, Michael Costello, James Lange, Bradley Gross, Sarah Anderson, Aaron Johnson, and Kent Grandlienard's Motion for Summary Judgment [Doc. No. 35] be **GRANTED**; and

2. Defendants Nathaniel Fritz, James Frick, and the Night Staff of 08/03/2013 in Complex 5 of MCF 2 – OPH be **DISMISSED without prejudice**.

Dated: February 5, 2016

 *s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.